IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KIEMOND CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. _____ |
| | ) | |
| BELMONT GEORGIA, LP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

COME NOW defendants Belmont Georgia, LP ("Belmont"), Michelle Goedeker ("Goedeker"), Ventron Realty Corp. ("Ventron Realty"), and Ventron Management, LLC ("Ventron Management") and, pursuant to 28 U.S.C. §§ 1441 and 1446, file this notice of removal within the time prescribed by law, showing the Court as follows:

1.

On January 18, 2013, plaintiff filed a complaint against defendants in the State Court of Clayton County, Civil Action No. 2013-CV-00188-E. Clayton County is within the Atlanta Division of the Northern District of Georgia.

2.

Defendants were served with a copy of the summons and complaint on the following dates:

Belmont – January 31, 2013

Goedeker – February 9, 2013

Ventron Realty – January 31, 2013

Ventron Management – February 5, 2013

This notice is timely because it is being filed within 30 days of the date when the last-served defendant was served with process.

3.

True and correct copies of all process, pleadings, and orders that have been served upon defendants in connection with this action are attached as Exhibit A. True and correct copies of defendants' answer, jury demand, and notice of non-party fault, which have been filed in the State Court of Clayton County, are attached as Exhibit B.

4.

This is a premises liability action involving an alleged assault and battery of plaintiff by an unknown person at the Sutter Lake Apartments in Riverdale,

Georgia, on March 14, 2011. (Compl. ¶¶ 22-23.)[1]  Plaintiff alleges that defendants

owned, operated, controlled, and/or managed the apartment complex and that they

are liable for his injuries and damages under O.C.G.A. § 51-3-1 because they

negligently maintained the property and allowed criminal activity to exist.  (*Id.* ¶¶

2, 7, 12, 17, 21, 25-35.)   Plaintiff also alleges that defendants are liable for (1)

negligence per se; (2) negligent supervision, hiring, training, and retention of

unnamed employees and agents; (3) fraud; (4) breach of contract; and (5) nuisance.

(*Id.* ¶¶ 36, 40, 41, 44, 48-49.)   Plaintiff seeks compensatory, general, special,

incidental, consequential, and punitive damages for, among other things, physical

injuries (some of which are alleged to be permanent), mental anguish, pain and

suffering, loss of capacity to enjoy life, impaired ability to work, loss of earning

capacity, and past and future medical expenses.  (*Id.* ¶¶ 50, 52.)   Plaintiff also

seeks attorney fees and litigation expenses under O.C.G.A. § 13-6-11. (*Id.* ¶ 53.)

5.

Although defendants do not know the exact nature and extent of plaintiff's

alleged injuries and damages at this time, the complaint alleges that one of

plaintiff's legs was amputated.  (*Id.* ¶ 45.)  Further, upon information and belief,

---

[1]     Although plaintiff characterizes the incident as an assault and battery, it was
no mere fistfight.  Instead, as the Clayton County Police Incident Report shows,
this incident actually involved plaintiff being shot with a gun.

defendants understand that plaintiff was shot not just once, but nine times in his abdomen, legs, and arms and that he has had at least eight surgeries. As for the amount of damages sought by plaintiff, the complaint confusingly alleges that he has incurred at least "$1,000.00.00" in special damages. (*Id.*) It is unclear whether this amount was intended to be $1,000,000.00, $1,000.00, or some other amount.

6.

This action is a civil action of which the Court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (b) in that it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.

Upon information and belief, plaintiff is, and was at the time the complaint was filed, a citizen of Georgia.

8.

Belmont is, and was at the time the complaint was filed, a limited partnership organized and existing under the laws of Delaware with its principal place of business in Delaware. Belmont has multiple partners, all of which are, and were at the time the complaint was filed, citizens of states other than Georgia.

Therefore, Belmont is not considered to be a citizen of Georgia. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-96 (1990) (holding that a limited partnership is a citizen of each state in which each of its general and limited partners is a citizen).

9.

Goedeker is, and was at the time the complaint was filed, a citizen of Georgia. As explained below, however, her citizenship should be disregarded because she has been fraudulently joined as a defendant to defeat diversity jurisdiction.

10.

Ventron Realty is, and was at the time the complaint was filed, a corporation organized and existing under the laws of Florida with its principal place of business in Florida. Therefore, Ventron Realty is considered to be a citizen of Florida. 28 U.S.C. § 1332(c)(1) (providing that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

11.

Ventron Management is, and was at the time the complaint was filed, a limited liability company organized and existing under the laws of Florida with its principal place of business in Florida. Ventron Management has only one member,

Ronald Eisenberg, and Mr. Eisenberg is, and was at the time the complaint was filed, a citizen of Florida. Therefore, Ventron Management is considered to be a citizen of Florida. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam) (holding that "a limited liability company is a citizen of any state of which a member of the company is a citizen").

12.

But for Goedeker being a citizen of Georgia, there would be complete diversity of citizenship between plaintiff and defendants. However, Goedeker's citizenship should be disregarded because she has been fraudulently joined as a defendant to defeat diversity jurisdiction. "To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (punctuation and internal quotation marks omitted). Defendants do not contend that plaintiff has fraudulently pleaded jurisdictional facts relating to Goedeker's citizenship, but they do contend that there is no possibility that plaintiff can establish a cause of action against Goedeker.

13.

Plaintiff's principal claim against Goedeker is based on her alleged negligence in providing for security at the Sutter Lake Apartments. Under O.C.G.A. § 51-3-1, owners and occupiers of property have a duty to exercise ordinary care in keeping the premises and approaches safe for their invitees. Goedeker did not own the property at the time of the incident, (Goedeker Aff. ¶ 3),[2] and plaintiff has not alleged otherwise, so this statute does not apply to Goedeker as an owner. Instead, plaintiff implicitly alleges that Goedeker was an occupier because, as the on-site property manager for the Sutter Lake Apartments at the time of the incident, she "actively managed" and "controlled" the premises. (Compl. ¶¶ 17, 26.) Although it is true that Goedeker was the on-site property manager for the Sutter Lake Apartments at the time of the incident, she was not a member, officer, or director of Ventron Management. (Goedeker Aff. ¶ 2.) Importantly, she did not contract with Belmont to provide management services for the property. (*Id.* ¶ 4.) Nor did she control the property, in her personal capacity, to such a degree as would render her an occupier within the meaning of O.C.G.A. § 51-3-1. (*Id.* ¶¶ 5-13.)

---

[2]     Goedeker's affidavit is attached as Exhibit C.

14.

For all of these reasons, Goedeker is not an owner or occupier within the meaning of O.C.G.A. § 51-3-1, which means that there is no possibility that plaintiff can establish a cause of action against her. Defendants acknowledge that Ventron Management is an occupier because it contracted with the owner of the property to provide management services. *Demps v. Total Equity Mgmt. Corp.*, 191 Ga. App. 21, 22, 381 S.E.2d 51, 53-54 (1989). However, an employee of an occupier is not himself or herself an occupier because he or she has no authority over the property bestowed by contract with the owner, like his or her employer does. *Anderson v. Atlanta Comm. for the Olympic Games, Inc.*, 273 Ga. 113, 118, 537 S.E.2d 345, 350 (2000); *Adams v. Sears, Roebuck & Co.*, 227 Ga. App. 695, 697, 490 S.E.2d 150, 153 (1997) (en banc). If any supervisory or managerial employee of a property management company is also considered to be an occupier, then every employee above the on-site property manager in the company hierarchy would be subject to being sued. The officers and directors could also be sued. If the property management company is a limited liability company, all of the members of the company could be sued, and if the property management company is a corporation, all of the shareholders could be sued. After all, these people "control" the property in some form or another. Moreover, certain employees

below the on-site property manager in the company hierarchy could also be subject to being sued. The maintenance supervisor, for example, "controls" certain aspects of an apartment complex. But these people are not who are intended to be included within the meaning of "occupier." That is not to say that natural people cannot be occupiers. For example, if Goedeker had contracted with Belmont, in her personal capacity, to provide property management services, she would be an occupier. People can be occupiers, but employees of occupiers cannot.

15.

To illustrate the point that employees of occupiers are not occupiers, the Court must bear in mind that the duty imposed by O.C.G.A. § 51-3-1 on an owner or an occupier applies only to the owner's or the occupier's invitees. "An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose." *Howard v. Gram Corp.*, 268 Ga. App. 466, 467, 602 S.E.2d 241, 243 (2004) (en banc). The key is whether there is a mutually beneficial purpose, and so the classic example of an invitee is a customer of a business. *Murray v. Fitzgerald Convenient Centers, Inc.*, 239 Ga. App. 799, 800, 521 S.E.2d 915, 916 (1999) (noting that "a store owes a statutory duty to its customers, as invitees"). Belmont and Ventron Management may have expressly or impliedly invited plaintiff to enter the premises, but Goedeker did not.

Indeed, Goedeker had no business dealings with plaintiff, in her personal capacity, such that he was her invitee. Because plaintiff was not Goedeker's invitee, she cannot be liable to him under O.C.G.A. § 51-3-1, regardless of whether she otherwise could be classified as an occupier based on her "control" of the property.

16.

Although defendants contend that Goedeker's affidavit demonstrates that there is no factual basis for her to be liable under O.C.G.A. § 51-3-1, they also contend that a person in her position – an on-site property manager employed by a property management company that has a contract for property management services with the owner of the property – cannot be liable under O.C.G.A. § 51-3-1 as a matter of law. However, in asserting this position, defendants acknowledge that there is conflicting authority from the Georgia Court of Appeals. In *Poll v. Deli Mgmt., Inc.*, No. 1:07-CV-0959-RWS, 2007 WL 2460769 (N.D. Ga. Aug. 24, 2007), Judge Story rejected a similar argument asserted by the defendant and held that the case had to be remanded because there was a possibility that the plaintiff could maintain a claim against the store manager. In reaching this decision, Judge Story examined many Georgia cases on this issue and concluded that "some uncertainty exists as to whether a store manager, alleged to be in possession and control of the premises where an injury occurred, may be held liable as either an

'owner or occupier' under O.C.G.A. § 51-3-1." *Id.* at \*7; *see also Stephens v. Wal-Mart Stores East, LP*, No. 5:09-CV-325 (CAR), 2010 WL 1487213, at \*1 (M.D. Ga. Apr. 12, 2010) ("Georgia courts have not provided clear guidance, however, with regard to the potential liability of a store manager . . . .").

17.

Because of this uncertainty, defendants urge the Court to certify this question to the Georgia Supreme Court so that it can be resolved definitively. (Obviously, certification is necessary only if the Court is unable to conclude that Goedeker's affidavit is insufficient to resolve this issue in her favor.) This is a recurring issue in potentially removable premises liability cases, but it is not likely to be resolved through the state courts and the normal appellate process. First, once the opportunity to remove the case to federal court is lost, there is no reason to litigate this issue after a final judgment has been entered since the employee of the occupier likely is covered by the occupier's insurance policy. Second, obtaining a dismissal of the non-diverse defendant through a motion filed in state court would not allow the diverse defendant(s) to remove the case to federal court because such a dismissal would be involuntary with respect to the plaintiff. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 761 (11th Cir. 2010) ("The traditional rule is that only a voluntary act by the plaintiff may convert a non-removable case

into a removable one."). Thus, this issue needs to be resolved in the context of removal, and the best way for it to be resolved is by certified question to the Georgia Supreme Court.

18.

Because plaintiff drafted his complaint in shotgun fashion, it is difficult to determine whether he intended to assert any claims against Goedeker other than the claim under O.C.G.A. § 51-3-1. Even if the other claims that plaintiff appears to be asserting are intended to be asserted against Goedeker, there is no possibility that plaintiff could succeed on those claims. With respect to plaintiff's claim for negligence per se, there is no law that Goedeker is alleged to have violated. With respect to plaintiff's claim for negligent supervision, hiring, training, and retention, Goedeker did not employ anyone who worked at the Sutter Lake Apartments (nor is she alleged to have done so), (Goedeker Aff. ¶ 18), and she cannot be liable for someone else's alleged negligence in supervising, hiring, training, and retaining its employee. With respect to plaintiff's claim for fraud, Goedeker has never spoken to plaintiff, or otherwise made any oral or written representations to him about crime or security at the Sutter Lake Apartments, (*Id.* ¶¶ 15-16), and so there is no basis for this claim. With respect to plaintiff's claim for breach of contract, Goedeker has never entered into a contract with plaintiff, (*Id.* ¶ 14), and so there is

no contract that she could have breached.  Finally, with respect to plaintiff's claim for nuisance, liability for a nuisance depends on control, and so the analysis above about Goedeker's "control" over the property applies equally here.

19.

For the foregoing reasons, there is no possibility that plaintiff could succeed on any of his claims against Goedeker.  Accordingly, Goedeker has been fraudulently joined as a defendant and should be dismissed from this case.  With her dismissed from the case and her citizenship disregarded, there is complete diversity of citizenship among the parties because plaintiff is a citizen of Georgia and no defendant is a citizen of Georgia.

20.

Plaintiff does not allege in his complaint that he is entitled to recover a specific amount of damages (other than alleging in paragraph 45 that he has incurred at least "$1,000.00.00" in special damages).  However, he alleges that he is entitled to recover punitive damages "without limitation or cap." (Compl. ¶ 52.)[3]  Under Georgia law, punitive damages are capped in non-product liability cases at $250,000

---

[3]  "Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) (per curiam) (citing *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)).

unless the plaintiff proves that the defendant acted, or failed to act, with specific intent to cause harm or while under the influence of alcohol, illegal drugs, or any intentionally consumed glue, aerosol, or other toxic vapor. O.C.G.A. § 51-12-5.1(f), (g). Here, plaintiff alleges that defendants and/or their employees and agents acted with a specific intent to cause harm such that the $250,000 cap does not apply. (Compl. ¶ 52.) Thus, plaintiff implicitly alleges in his complaint that he is entitled to recover *at least* $250,000.01 in punitive damages alone.[4] Based on this – not to mention the unspecified compensatory damages that plaintiff is also seeking for, among other things, eight surgeries and an amputated leg – there is no question that plaintiff is seeking more than $75,000 in this action, exclusive of interest and costs. *Bell v. Preferred Life Assurance Soc'y of Montgomery*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a

_____

[4]     Defendants are cognizant of *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), and the burden it places on a removing defendant to prove the amount in controversy by a preponderance of the evidence when the complaint does not specify an amount of damages sought. *Lowery*, however, dealt with a complaint alleging an entitlement to unspecified damages. In contrast, this case involves a complaint that, while not including a specific numerical figure in what it alleges plaintiff is entitled to recover, effectively alleges that plaintiff is entitled to recover a minimum of $250,000.01 in punitive damages. This implicit allegation means that this case does not involve a claim for unspecified damages, at least with respect to punitive damages, and so *Lowery* does not apply to this case. Because plaintiff's own prayer for punitive damages satisfies the amount in controversy requirement, without even factoring in his prayer for compensatory damages, the amount in controversy exceeds the jurisdictional minimum.

complaint each must be considered *to the extent claimed* in determining jurisdictional amount.") (emphasis added).

21.

Defendants hereby certify that they have given notice of filing of this notice to plaintiff and have filed a written notice with the Clerk of the State Court of Clayton County, a copy of which is attached as Exhibit D.

22.

The undersigned has read this notice, and to the best of the undersigned's knowledge, information, and belief, formed after reasonable inquiry, it is well-grounded in fact; is warranted by existing law; and is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

FREEMAN MATHIS & GARY, LLP


_____ /s/ *Jacob E. Daly* _____
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Jacob E. Daly
Georgia Bar No. 203723
jdaly@fmglaw.com

Attorneys for Defendants

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

C:\NRPortbl\iManage\JDALY\696892_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **NOTICE OF REMOVAL** with the Clerk of Court using the CM/ECF system and that I have served the following attorneys of record by depositing a true and correct copy thereof in the United States mail, postage prepaid:

James A. Rice, Jr., Esq.
JAMES A. RICE, JR., P.C.
563 Spring Street, N.W.
Atlanta, GA 30308

This 4th day of March, 2013.

_____ /s/ Jacob E. Daly _____
Jacob E. Daly
Georgia Bar No. 203723

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)